IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

OMAR NATIFIE BLACK, JR.,

    *Petitioner*,

v.

UNITED STATES OF AMERICA,

    *Respondent*.

Criminal Action No. ELH-17-0384
Related Civil No.: ELH-19-63

**MEMORANDUM**

This Memorandum resolves a motion to vacate filed by the self-represented Petitioner, Omar Natifie Black, Jr., pursuant to 28 U.S.C. § 2255. ECF 131. It is supported by a memorandum (ECF 131-1) (collectively, the "Petition"). The Petition was received by the Court on January 7, 2019. *See* ECF 131-1. Duplicate submissions were also received on January 8, 2019 (ECF 132) and January 18, 2019 (ECF 135).[1] In addition, Mr. Black has provided his Sworn Declaration. ECF 131-1 at 5; ECF 135 at 5.

Petitioner asserts three grounds for relief. First, he claims his attorney was ineffective for failing to challenge a particular count in the Indictment as duplicitous. Second, Black claims that his attorney was ineffective for failing to advise him as to the elements of the offenses in issue. Third, Black maintains that his attorney failed to consult with him regarding his right to appeal following imposition of sentence. The government opposes the Petition. ECF 142. No reply has been filed, and the time to do so has expired.

---

[1] Petitioner asserts, ECF 131 at 10: "This petition is timely filed on November 26, 2018, pursuant to the mailbox rule as it was provided to prison staff for mailing on this date . . . . Therefore, the petition complies with 18 U.S.C. § 2255(f)(1)." Notably, the envelopes containing the petitions show postmarks of January 7, 2019, and January 8, 2019. *See* ECF 131-3; ECF 132. However, the government has not raised a claim that the Petition was untimely filed. Therefore, the Court will not address the timeliness of the Petition.

In reviewing the Petition, the Court is mindful that a self-represented litigant is generally "held to a 'less stringent standard' than is a lawyer, and the Court must liberally construe his claims, no matter how 'inartfully' pled." *Morrison v. United States*, RDB-12-3607, 2014 WL 979201, at *2 (D. Md. Mar. 12, 2014) (internal citations omitted); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *Bala v. Commonwealth of Virginia Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013) (same).

Under 28 U.S.C. § 2255(b), the Court must hold a hearing "[u]nless the motion and the files and records conclusively show that the prisoner is entitled to no relief . . . ." *See*, *e.g.*, *United States v. White*, 366 F.3d 291, 302 (4th Cir. 2004). This is such a case. No hearing is necessary.

For the reasons that follow, I shall deny the Petition.

## I. Procedural and Factual Background

Between March 2016 and January 2017, Black sold over one kilogram of heroin and more than 100 grams of fentanyl. He also purchased about 10 handguns. During a search of Black's residence, a loaded Glock .40 caliber pistol was recovered, along with a bag of fentanyl weighing approximately 136 grams. *See* ECF 142-1 at 30-33.

On July 19, 2017, Black and three others were indicted on multiple charges. ECF 18. The charges against Black included conspiracy to distribute and possess with intent to distribute controlled substances, in violation of 21 U.S.C. § 846 (Count One); thirteen counts of distribution of controlled substances, in violation of 21 U.S.C. § 841(a)(1); possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1) (Count Fifteen); possession of a firearm in furtherance of drug trafficking crimes, *i.e.*, Counts One and Fifteen, in violation of 18

U.S.C. § 924(c) (Count Sixteen); two counts of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g); and one count of maintaining a drug involved premises, in violation of 21 U.S.C. § 846. ECF 18.

Black entered a plea of guilty on November 29, 2017, to Count Two, charging distribution of a controlled substance, and to Count Sixteen, charging possession of a firearm in furtherance of a drug trafficking crime. ECF 59. The plea was tendered pursuant to Fed. R. Crim. P. 11(c)(1)(C), by which the parties stipulated to a total sentence of 156 months (13 years) incarceration. *See* ECF 61 (Plea Agreement), ¶ 9; *see also* ECF 142 at 3.

In connection with the guilty plea, the Court conducted a comprehensive Rule 11 proceeding. *See* ECF 142-1 (Transcript). Among other things, the Court posed several questions to Petitioner regarding his satisfaction with his attorney. The answers established that Mr. Black thoroughly discussed the case with his lawyer and was satisfied with his lawyer's representation of him.

For example, the Court asked, "Without getting into the particulars of any of your private conversations with [your lawyer], in general can you tell me whether you have discussed with him your rights in connection with these charges . . . ." ECF 142-1 at 5. Black responded, "Yes." *Id.* The Court also reviewed the terms of the Plea Agreement in detail, including the elements of the offenses. The Court asked Black, "Do you understand these essential elements?" Black responded, "Yes." *Id.* at 8. After discussing the remainder of the Plea Agreement, including the maximum penalties, the factual basis, and other terms, the Court accepted Petitioner's guilty plea as knowing and voluntary.

At the request of the defendant, the Court proceeded directly to sentencing. *See* ECF 142-1 at 34-45.

As the record reflects, Mr. Black may have qualified as a career offender. However, the Court declined to resolve that issue, in light of the C plea. ECF 142-1 at 50. Assuming that Mr. Black was not a career offender, the Court found that he was a criminal history category of VI and, for Count Two, his offense level was a 27, yielding advisory guidelines of 130 to 162 months for Count Two. *Id.* at 48-50. Count Sixteen carried a congressionally mandated minimum sentence of five years, consecutive. Therefore, the non career offender advisory guidelines called for a total sentence ranging between 190 months and 222 months of imprisonment.

In accordance with the Plea Agreement, the Court imposed a below guidelines sentence of 156 months -- eight years for Count Two and five years, consecutive, for Count Sixteen. Pursuant to the Plea Agreement, the government dismissed Count One, which carried a mandatory minimum sentence of ten years' imprisonment.

No appeal was noted by Mr. Black.

Additional facts are included, *infra*.

## II. Section 2255

Section 2255(a) of Title 28 of the United States Code provides relief to a prisoner in federal custody only on specific grounds: that the sentence was imposed in violation of the Constitution or laws of the United States; that the court was without jurisdiction to impose such a sentence; that the sentence was in excess of the maximum authorized by law; or that the sentence is otherwise subject to collateral attack. *See Hill v. United States*, 368 U.S. 424, 426-27 (1962) (citing 28 U.S.C. § 2255); *United States v. Hodge*, 902 F.3d 420, 426 (4th Cir. 2018); *United States v. Middleton*, 883 F.3d 485 (4th Cir. 2018); *United States v. Newbold*, 791 F.3d 455, 459 (4th Cir. 2015).

"[A]n error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting *Hill*, 368 U.S. at 428). In other words, the movant must establish (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law so fundamental as to render the entire proceeding invalid. *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003).

Claims previously litigated on direct appeal are generally not cognizable under § 2255. *Schlup v. Delo*, 513 U.S. 298, 318-19 (1995). In *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976), the Court said that a petitioner "will not be allowed to recast, under the guise of a collateral attack, questions fully considered" and decided on direct appeal.

The scope of a collateral attack under § 2255 is far narrower than an appeal, but a "'collateral challenge may not do service for an appeal.'" *Foster v. Chatman*, ___ U.S. ___, 136 S. Ct. 1737, 1758 (2016) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)). Thus, any failure to raise a claim on direct appeal constitutes a procedural default that bars presentation of the claim, unless the petitioner can demonstrate "cause and actual prejudice resulting from the errors of which he complains," or "actual innocence." *United States v. Pettiford*, 612 F.3d 270, 280 (4th Cir. 2010) (citing *United States v. Mikalajunas*, 186 F.3d 490, 492-93 (4th Cir. 1999)); *see Bousley v. United States*, 523 U.S. 614, 621 (1998) ("Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal.") (internal quotations and citations omitted); *Dretke v. Haley*, 541 U.S. 386, 393 (2004); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *see also Reed v. Farley*, 512 U.S. 339, 354 (1994) (stating that where the petitioner "failed properly to raise

his claim on direct review, the writ is available only if the petitioner establishes 'cause' for the waiver and shows 'actual prejudice resulting from the alleged . . . violation.'") (citation omitted).[2]

Under the "cause and prejudice" standard, the petitioner must show: (1) cause for not raising the claim of error on direct appeal; and (2) actual prejudice from the alleged error. *Bousley*, 523 U.S. at 622; *see also Dretke*, 541 U.S. at 393; *Reed*, 512 U.S. at 354; *Frady*, 456 U.S. at 167-68.

In order to show cause for failure to raise a claim of error on direct appeal, a petitioner must prove that "some objective factor external to the defense such as the novelty of the claim or a denial of effective assistance of counsel" impeded efforts to raise the issue earlier. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991); *see also Carrier*, 477 U.S. at 492 ("[C]ause . . . requires a showing of some external impediment preventing counsel from constructing or raising the claim."); *Mikalajunas*, 186 F.3d at 493 (movant must demonstrate "something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel"). Additionally, the alleged error cannot simply create "a *possibility* of prejudice," but must be proven to work to the petitioner's "*actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170 (emphasis in original). Put another way, prejudice does not support relief from a procedural default, in the absence of a showing of cause. *Carrier*, 477 U.S. at 494; *Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982).

### III. Discussion

#### A.

---

[2] Failure to raise on direct appeal a claim of ineffective assistance of counsel is not regarded as procedurally defaulted. *Massaro v. United States*, 538 U.S. 500, 509 (2003). Thus, such a claim is not barred under § 2255.

The Sixth Amendment to the Constitution guarantees a criminal defendant the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *see also Buck v. Davis*, ____ U.S. ____, 137 S. Ct. 759, 775 (2017). Ineffective assistance of counsel is a well recognized basis for relief under § 2255. *See generally Missouri v. Frye*, 566 U.S. 133 (2012); *Lafler v. Cooper*, 566 U.S. 156 (2012); *Padilla v. Kentucky*, 559 U.S. 356 (2010).

To mount a successful challenge under 28 U.S.C. § 2255 based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-pronged test set forth in *Strickland*, 466 U.S. at 687–88. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000); *United States v. Winbush*, 922 F.3d 227, 229 (4th Cir. 2019); *United States v. Carthorne*, 878 F.3d 458, 465 (4th Cir. 2017); *United States v. Powell*, 850 F.3d 145, 149 (4th Cir. 2017). First, the petitioner must show that counsel's performance was deficient. Second, the petitioner must show that he was prejudiced by the deficient performance. *Strickland*, 466 U.S. at 687; *see Buck*, 137 S. Ct. at 775; *Chaidez v. United States*, 568 U.S. 342, 348 (2013); *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985); *Winbush*, 922 F.3d at 229; *Powell*, 850 F.3d at 149; *United States v. Rangel*, 781 F.3d 736, 742 (4th Cir. 2015); *United States v. Dyess*, 730 F.3d 354, 361 (4th Cir. 2013); *Richardson v. Branker*, 668 F.3d 128, 139 (4th Cir. 2012); *United States v. Higgs*, 663 F.3d 726, 735 (4th Cir. 2011); *see, e.g., United States v. Baker*, 719 F.3d 313, 318 (4th Cir. 2013).

The first prong is known as the "performance prong," which relates to professional competence. The petitioner must demonstrate that his attorney's performance fell "below an objective standard of reasonableness," as measured by "prevailing professional norms." *Strickland,* 466 U.S. at 688; *see Harrington v. Richter*, 562 U.S. 86, 104 (2011); *Powell*, 850 F.3d at 149. The central question is whether "an attorney's representation amounted to incompetence

7

under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Richter*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 690).

The Supreme Court recently reiterated that the "first prong sets a high bar." *Buck*, 137 S. Ct. at 775; *see also Powell*, 850 F.3d at 149. In *Padilla*, the Court said, 559 U.S. at 371: "Surmounting *Strickland's* high bar is never an easy task." Notably, a "lawyer has discharged his constitutional responsibility so long as his decisions fall within the 'wide range of professionally competent assistance.'" *Buck*, 137 S.Ct. at 775 (citation omitted). Consequently, the performance prong is "'difficult'" to establish. *Lawrence v. Branker*, 517 F.3d 700, 709 (4th Cir. 2008) (quoting *James v. Harrison*, 389 F.3d 450, 457 (4th Cir. 2004)).

To satisfy the high bar, the burden is on the petitioner to establish "'that counsel made errors so serious that his "counsel" was not functioning as the "counsel" guaranteed by the Sixth Amendment.'" *Richter*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 687). Notably, "the *Strickland* standard must be applied with scrupulous care," *Richter*, 562 U.S. at 105, and "the standard of judging counsel's representation is a most deferential one." *Id.* Indeed, "[k]eenly aware of the difficulties inherent in evaluating counsel's performance, the Supreme Court has admonished that courts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Lawrence*, 517 F.3d at 708 (quoting *Strickland*, 446 U.S. at 689); *see Cullen v. Pinholster*, 563 U.S. 170, 189 (2011); *Richter*, 562 U.S. at 104; *Lee v. Clarke*, 781 F.3d 114, 122 (4th Cir. 2015).

Second, the petitioner must show that his attorney's deficient performance "prejudiced [his] defense." *Strickland*, 466 U.S. at 687. To satisfy the "prejudice prong," a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also Buck*, 137 S. Ct. at 776; *Lafler*, 566

U.S. at 163; *Lockhart v. Fretwell*, 506 U.S. 364, 369-70 (1993). "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Strickland*, 466 U.S. at 687. However, a petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

A court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.* at 697. Nor must a court address both components if one is dispositive. *Jones v. Clarke*, 783 F.3d 987, 991 (4th Cir. 2015). This is because failure to satisfy either prong is fatal to a petitioner's claim. As a result, "there is no reason for a court...to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

**B.**

Black contends that his lawyer was ineffective because he "advised Black to plead to a duplicititous [sic] count (16) which states 'did knowingly possess a firearm in furtherance of a drug trafficking crime, to wit: Conspiracy to distribute and possess with the intent to distribute controlled substances . . . as charged in count one of this indictment; & possession with intent to distribute . . . as charged in count fifteen of this indictment . . . .'" ECF 131-1 at 1-2. According to Black, Count Sixteen charges "two distinct offenses." *Id.* at 2. He adds that he was not "properly apprised of the elements . . . ." *Id.* at 3.

Black was not charged with two separate offenses in Count Sixteen. Rather, the count charged a single offense of possession of a firearm in furtherance of drug trafficking, and the drug trafficking pertained to the offenses charged in Count One and Count Fifteen.

9

Had Petitioner's counsel moved to dismiss Count Sixteen as duplicitous, the motion would have failed. Even if Count Sixteen is duplicitous, "a duplicitous count is not to be dismissed unless it causes prejudice to the defendant." *United States v. Sturdivant*, 244 F.3d 71, 75 (2d Cir. 2001) (citing *United States v. Margiotta*, 646 F.2d 729, 733 (2d Cir. 1981) and *United States v. Murray*, 618 F.2d 892, 896 (2d Cir. 1980)). Duplicity is generally not fatal to an indictment, but rather "a pleading rule." *United States v. Droms*, 566 F.2d 361, 3633 n.1 (2d Cir. 1977).

If the case had proceeded to trial, the government would have had to prove, beyond a reasonable doubt, that Black possessed the firearm in furtherance of a drug trafficking offense. It could have proceeded on Count Sixteen in the disjunctive or solely by proving Count Fifteen. ECF 142 at 9. The issue identified by Black could have been cured at trial by an appropriate jury instruction and/or by means of the verdict form.

Moreover, the Court advised Petitioner of the elements of the offenses to which he pleaded guilty. The elements were also set out in the Plea Agreement. ECF 61, ¶ 2. During the colloquy, the Court explained the concept of elements and the elements that were pertinent. *See* ECF 142-1 at 8. Black acknowledged that he "carefully reviewed every part of [the Plea Agreement] with [his] attorney." *Id.* at 6-7.

Of import here, the Sixth Amendment right to counsel extends to the plea-bargaining process. *McMann v. Richardson,* 397 U.S. 749, 771 (1970). But, the prejudice prong of the *Strickland* test is slightly modified. *Hooper v. Garraghty*, 845 F.2d 471, 475 (4th Cir. 1988). In *Hooper*, the Fourth Circuit described a defendant's burden in the context of a post-guilty plea claim of ineffective assistance of counsel and said, *id.* (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)):

> When a defendant challenges a conviction entered after a guilty plea, [the] "prejudice" prong of the [*Strickland*] test is slightly modified. Such a defendant

> "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."

*Accord Burket v. Angelone,* 208 F.3d 172, 189 (4th Cir. 2000); *Fields v. Attorney Gen. of Md.*, 956 F.2d 1290, 1294–99 (4th Cir. 1992). Moreover, when a criminal defendant claims ineffective assistance of counsel after pleading guilty, he is "bound," absent clear and convincing evidence to the contrary, "by the representations he made under oath during a plea colloquy." *Fields*, 956 F.2d at 1299; *see Blackledge v. Allison*, 431 U.S. 63, 74-75 (1977); *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005).

In *Hill*, 474 U.S. 52, the Supreme Court explained that, "where . . . a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness [and intelligence] of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Id.* at 56 (citing *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). And, as noted, in assessing whether counsel's performance was deficient, courts adopt a "strong presumption" that counsel's actions fell within the "wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

*Hooper*, 845 F.2d 471, provides guidance. In that case, the defendant, who had a history of mental illness, pled guilty in a Virginia court to second-degree murder. *Id.* at 472. However, his lawyers failed to obtain a psychiatric evaluation before the defendant's entry of the guilty plea. *Id.* Hooper subsequently filed a habeas corpus petition, which the district court denied. On appeal, the Fourth Circuit noted that the "burden is on Hooper to establish a reasonable probability that if his lawyers had obtained a psychiatric report, he would have rejected the plea agreement" and gone to trial. *Id.* at 475.

The Fourth Circuit examined a psychiatric report obtained after the guilty plea against the background of the circumstances Hooper faced at the time he decided to plead guilty. The Court

was not persuaded that the report provided evidence sufficient to establish a reasonable probability that Hooper would have declined the plea agreement and gone to trial, even if his counsel had obtained a psychiatric report at the time. *Id.* at 475-76. Although the Court concluded that the failure to obtain a psychiatric report fell below the objective standard of reasonableness established by *Strickland*, it was satisfied that Hooper was not prejudiced because there was no reasonable probability that the deficiency changed the outcome of the proceeding. *Id.*

The same rationale applies here. There is no indication or basis to conclude that Black would not have pleaded guilty had he been aware of a potential claim that Count Sixteen was duplicitous.

In his second contention, Black asserts: "Counsel failed to properly consult Black on his right to a direct appeal[.]" ECF 135 at 3. Further, he asserts, *id.*: "Regardless of any waiver [of appeal] provision, counsel still has a duty to review the case and determine if there are nay issues to be raised on appeal. Counsel failed to comply with the full standards of Roe v. Flores-Ortega," [528 U.S. 470 (2000)]. In its opposition, the government fails to discuss *Roe v. Flores Ortega*.

In *Roe v. Flores-Ortega*, the Supreme Court said that counsel has "a constitutionally imposed duty to consult" with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal. . . or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." 528 U.S. at 480. The Supreme Court added, *id.*: "In making this determination, courts must take into account all the information counsel knew or should have known." And, said the Court, "a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." The Court also pointed out that courts should

consider, among other things, "whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights." *Id.*

Here, the Plea Agreement (ECF 61) expressly provided for a sentence of thirteen years (*id.*, ¶ 9) and that is precisely the sentence imposed on Black. *See* ECF 63 (Judgment). Moreover, in the Plea Agreement (ECF 61), Black expressly waived all rights to appeal his conviction. ECF 61, ¶ 12(a). In particular, he expressly waived his right to appeal whatever sentence was imposed, "[i]f the Court accepts the plea agreement . . . ." *Id.*, ¶ 12(b).

During the Rule 11 proceeding, the Court reviewed with Black his waiver of appeal, as set forth in paragraph 12 of the Plea Agreement. *See* ECF 142-1 (Transcript) at 16-17. The waiver was valid. *See United States v. Thornsbury*, 670 F.3d 532, 537 (4th Cir. 2012).

To be sure, "even valid appeal waivers do not bar claims that a factual basis is insufficient to support a guilty plea." *United States v. McCoy*, 895 F.3d 358, 364 (4th Cir. 2018). But, a valid plea agreement that is "accompanied by a sworn factual basis . . . will preclude defendants from simply denying their guilt." *Id.*; *see Blackledge*, 431 U.S. at 73-74. And, "[a] stipulated recitation of facts alone is sufficient to support a plea." *United States v. Ketchum*, 550 F.3d 363, 367 (4th Cir. 2008).

Given Black's waiver of the right to appeal, the adequate factual predicate in support of his plea (ECF 61 at 8-9), and the Court's imposition of the agreed upon sentence, there was no basis for an appeal. And, significantly, Black does not allege that he ever instructed his lawyer to file an appeal. To the contrary, he merely claims his lawyer "did not properly consult" with him about noting an appeal. ECF 135 at 3. The lawyer, then, would not have been ineffective within the meaning of *Flores-Ortega*.

In view of the foregoing, there are no grounds for post-conviction relief.

## IV. Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, the court is required to issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant. A COA is a "jurisdictional prerequisite" to an appeal from the court's earlier order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007). In other words, unless a COA is issued, a petitioner may not appeal the court's decision in a § 2255 proceeding.[3] 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b).

A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Buck v. Davis*, ___ U.S. ___, 137 S. Ct. 759, 773 (2017). Where the court denies a petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *See Tennard v. Dretke*, 542 U.S. 274, 282 (2004); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003).

Petitioner has not made a substantial showing of the denial of his constitutional rights. Therefore, I decline to issue a COA.

An Order follows.

Date: October 25, 2019 /s/
Ellen L. Hollander
United States District Judge

---

[3] The denial of a COA by the district court does not preclude Petitioner from seeking a COA from the appellate court.